UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICAELLA SHEARS, <br><br> Plaintiffs, <br><br> v. <br><br> ARTHUR PARK, M.D.; BOSTON SCIENTIFIC CORPORATION; and DOES 1 through 50, <br><br> Defendants. | Case No.: 1:13-cv-01298 - AWI - JLT <br><br> ORDER GRANTING PLAINTIFF'S MOTION TO REMAND <br><br> (Doc. 13) |

Plaintiff Micaella Shears seeks a remand of this action, which was removed from Kern County Superior Court by Defendant Boston Scientific Corporation ("Defendant"). (Doc. 13). Defendant filed its opposition to the motion on September 17, 2013 (Doc. 17), to which Plaintiff filed a reply on September 24, 2013 (Doc. 21). The matter was taken under submission pursuant to Local Rule 230(g). For the following reasons, Plaintiff's motion to remand is **GRANTED**.

I.  **Factual and Procedural Background**

Plaintiff filed a complaint in Kern County Superior Court, Case No. S-1500-CV-279733, on June 28, 2013.[1]  (Doc. 1-1). Plaintiff alleges Boston Scientific Corporation designed, formulated,

---

[1] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).  Court records are sources whose accuracy cannot reasonably be questioned. *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n. 1 (N.D. Cal.1978),

1

1  compounded, tested, manufactured, produced, processed, assembled, inspected, distributed, marketed,
2  labeled, promoted, packaged and/or advertised for sale a midurethral sling that was placed in Plaintiff.
3  (Doc. 1-1 at 3-4, ¶3).

4  According to Plaintiff, in October 2008 and again in February 2009, "the United States Food &
5  Drug Administration informed health care providers about serious complications associated with
6  transvaginal placement of surgical mesh in repair of pelvic organ prolapse and stress urinary
7  incontinence." (Doc. 1-1 at 4, ¶8). Plaintiff asserts Boston Scientific Corporation "concealed that its
8  product substantially increased the risk of serious and severe injuries, to its users, and the midurethral
9  sling was not adequately tested in terms of safety." (*Id.* at 8, ¶29). She alleges that "Boston Scientific
10 Corporation . . . or their agents or sales representatives, orally and in publications, packet inserts and
11 other written materials and to the general public, [represented] that the midurethral sling was safe,
12 effective, fit and proper for its intended use." (*Id.* at 9, ¶36). However, Plaintiff asserts "the
13 engineering and design of the midurethral sling failed to consider safety issues and was in fact unsafely
14 designed and engineered." (*Id.* at 8, ¶29).

15 Plaintiff alleges that she had "an abdominal hysterectomy with revision of scar and placement
16 of midurethral sling with obtryx performed by defendant Arthur Park, M.D." on February 17, 2011.
17 (Doc. 1-1 at 4-5, ¶ 9). She asserts Dr. Park "failed to advise [her] of the risks associated with placement
18 of a midurethral sling" and "of the potential for serious complications with the use of mesh." (*Id.* at 5,
19 ¶ 12). According to Plaintiff she began to experience "physical symptoms from the placement of the
20 midurethral sling in July/August 2012." (*Id.*, ¶ 10). Plaintiff reports Dr. Park informed her "that there
21 was a problem with the surgical mesh" on August 13, 2012. (*Id.*) She alleges she "was seen by another
22 physician due to her complaints regarding the midurethral sling" on October 16, 2012, at which time
23 she "was advised that the mesh placed during the February 17, 2011 surgery should not have been used
24 for anyone sexually active and under the age of seventy." (*Id.* at 5, ¶ 13).

25 Plaintiff asserts that as a result of Defendants' conduct, she "suffered damages, including pain
26 and suffering and had to pay the cost of additional medical and hospital care treatment." (Doc. 1-1 at
27
28 *aff'd*, 645 F.2d 699 (9th Cir. 1981). Accordingly, judicial notice is taken of the complaint filed in Kern County Superior Court, Case No. S-1500-CV-279733.

12, ¶52). In addition, Plaintiff alleges she "suffered loss of earnings and earning capacity." (*Id.*) For the foregoing, Plaintiff raises the following causes of action: (1) medical malpractice against Dr. Park; (2) negligence, (3) strict liability- products liability and failure to warn, (4) breach of express warranty (5) breach of implied warranty, and (6) deceit/fraudulent concealment. (*See id.* at 3).

Defendant Boston Scientific Corporation filed a Notice of Removal of the action on August 14, 2013, thereby initiating the action in this Court. (Doc. 1). Defendant asserted "there is complete diversity among all properly joined an[d] served parties" and that "the citizenship of defendant Arthur Park, M.D., should be ignored, as this defendant is fraudulently misjoined." (*Id.* at 2, 7) (citing, *e.g.*, *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996); *Sutton v. Davol, Inc.,* 251 F.R.D. 500 (E.D. Cal. 2008)). Accordingly, Defendants contend the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because "there exists complete diversity of citizenship between plaintiff and BSC, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs." (*Id.* at 4).

The Judicial Panel on Multidistrict Litigation ("JPML") has established several Multidistrict Litigation proceedings for mesh products, including the product identified in Plaintiff's complaint. On February 7, 2012, the JPML issued a Conditional Transfer Order centralizing actions related to pelvic mesh products in the Southern District of West Virginia before the Honorable Joseph Goodwin in MDL No. 2326 for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *In re: Boston Scientific Corp. Pelvic Repair System Productions Liability Litigation*, 844 F.Supp.2d 1359, 1362 (J.P.M.L. 2012). Defendants filed a notice with the JPML identifying Plaintiff's case as possible "tag-along" action to MDL No. 2326. The JPML determined the action "involve[s] questions of fact that are common to the actions previously transferred to the Southern District of West Virginia and assigned to Judge Goodwin" and conditionally transferred Plaintiff's case to MDL No. 2326 on August 21, 2013. (Doc. 18-1 at 2, Awong Decl.- Exh. A). Plaintiff filed a Motion to Vacate the Conditional Transfer Order on September 10, 2013. (Doc. 18-1 at 5, Awong Decl.- Exh. B) The parties are currently awaiting a hearing date from the JPML. Defendant seeks a stay of the action pending a decision by the JPML, while Plaintiffs seek a remand of the action to Kern County Superior Court.

Notably, the parties disagree whether the Court should address the matter of its jurisdiction prior to the motion to stay (which is set for hearing on October 15, 2013), or whether the issue of jurisdiction

should be reserved for consideration by the MDL Panel. According to Defendant, "courts frequently grant stays pending a decision by the MDL Panel regarding whether to transfer a case." (Doc. 17 at 10) (quoting *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997). Defendant notes several courts have stayed proceedings arising under similar circumstances. *Id.* at 10-11 (citing, *e.g.*, *Rubio v. Arndal*, 2013 WL 796669, at *2 (E.D. Cal. Mar. 4, 2013); *Nichols v. DePuy Orthopaedics, Inc.*, 2011 WL 5335619, at *2-3 (N.D. Cal. Nov. 2, 2011); *In re Vioxx Prod. Liab. Cases*, 2005 WL 6573263, at *3 (S.D. Cal. July 11, 2005). Therefore, Defendant asserts the "pretrial issues . . . should be decided by the MDL court to preserve judicial resources and avoid inconsistent rulings." *Id.* at 13.

On the other hand, Plaintiff contends the Court should address the matter of its jurisdiction prior to deciding whether to stay the action. Plaintiff observes: "The law of the Ninth Circuit provides that normally jurisdiction must be determined prior to reaching other threshold issues absent specific exceptions to this general rule." (Doc. 21 at 3) (citing *Martin v. Depuy Orthopaedics Inc.*, 2013 U.S. Dist. LEXIS 22399 *3, fn.1, 2013 WL 607855 at 1, fn.1 (S.D. Cal. Feb. 15, 2013); *Potter v. Hughes*, 546 F.3d 1051, 1061 (9th Cir. 2008)). According to Plaintiff, because a preliminary assessment "suggests that the removal was improper, the Court must 'promptly complete its consideration of' the motion to remand rather than staying the case." (Doc. 21 at 5) (quoting *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F.Supp.2d 1049, 1053 (N.D. Cal. 2004).

Importantly, because the district courts are "court of limited jurisdiction," the Court has an obligation to assure itself of its jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-69 (9th Cir. 1981). The Court "should not automatically stay discovery, postpone rulings on pending motions, or generally suspend further rulings upon a parties' motion to the MDL Panel for transfer and consolidation." *Rivers*, 980 F. Supp. at 1360; JPML Rule 2.1(d) ("The pendency of a motion . . . [or] conditional transfer order . . . before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court"). Accordingly, the Court declines to delay ruling upon the motion to remand until the date of hearing on Defendant's motion to stay the action, and considers whether it has jurisdiction over the action.

## II. Removal to Federal Court

Pursuant to 28 U.S.C. § 1441(a), a defendant has the right to remove a matter to federal court where the district court would have original jurisdiction. *Caterpillar, Inc. v. Williams*, 482 U.S. 286, 392 (1987). Specifically,

> Except otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* at § 1331.

A party seeking removal must file a notice of removal of a civil action within thirty days of receipt of a copy of the initial pleading. *Id.* at § 1446(b). Removal statutes are to be strictly construed, *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal bears the burden of proving its propriety. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683-85 (9th Cir. 2006); *see also Calif. ex. rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 ("the burden of establishing federal jurisdiction falls to the party invoking the statute"). "[A]ny doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus*, 980 F.2d at 566).

The District Court has original jurisdiction over actions in which there is complete diversity of citizenship. *See* 28 U.S.C. § 1332(a). Thus, the plaintiffs must be citizens of different states than each of the defendants. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Plaintiff alleges she and Dr. Park are residents of the State of California (Doc.1-1 at 10), and Boston Scientific Corporation asserts it is "a Delaware corporation with its principal place of business in Massachusetts." (Doc. 1 at 6). Removing Defendant asserts the diversity requirement of 28 U.S.C. § 1332(a) is satisfied because Dr. Park has been "fraudulently misjoined" in the action.

## III. Discussion and Analysis

As explained by the Ninth Circuit, an exception to the requirement for complete diversity exists when a non-diverse defendant is "fraudulently joined." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). "Fraudulent joinder is a term of art," and does not require an ill motive by a

plaintiff. *Id.* Here, Defendants urge the Court to adopt the doctrine of "fraudulent misjoinder" for finding removal jurisdiction, despite that this novel concept has not been approved by the Ninth Circuit Court of Appeals. For the reasons set forth below, the Court declines to adopt this doctrine and finds, in any event, remand is appropriate.

The Eleventh Circuit, which examined joinder of defendants under Rule 20 of the Federal Rules of Civil Procedure, determined the misjoinder of claims "may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *overruled other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000). Thus, according to *Tapscott*, fraudulent misjoinder examines the *facts* to determine whether claims against one defendant "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" or have any "real connection," while fraudulent joinder requires an examination of the *merits* to determine if the plaintiff failed to state a claim against the non-diverse defendant. *Compare Tapscott,* 77 F.3d at 1360 (quoting Fed. R. Civ. P. 20(a)*, with Nasrawi v. Buck Consultants, LLC*, 776 F. Supp. 2d 1166, 1175 (E.D. Cal. 2011) (fraudulent joinder requires a Court to determine "the plaintiff could not possibly recover against the party whose joinder is questioned").

District Courts within the Ninth Circuit disagree regarding fraudulent misjoinder. Even this Court has issued conflicting opinions regarding whether to adopt the doctrine. *Compare Sutton v. Davol, Inc.,* 251 F.R.D. 500 (E.D. Cal. 2008) (adopting the doctrine and finding the plaintiffs' claims on strict products liability were distinct from the plaintiff's claims of medical malpractice) *with Osborn v. Metro. Life Ins. Co.*, 341 F.Supp. 2d 1123 (E.D. Cal. 2004) (rejecting the doctrine and explaining that "when considering the joinder of parties, a court should rely on Rule 20 of the Federal Rules of Civil Procedure or its state counterpart"); *see also Rubio*, 2013 WL 796669, at *2 (E.D. Cal. Mar. 4, 2013) (declining to determine whether the fraudulent misjoinder doctrine should be adopted).

The Court finds the concept of fraudulent misjoinder to be faulty, and is confounded by the concept's circular logic in that it requires the Court first—in full recognition of the lack of diversity jurisdiction—sever part of the case and *only then* find it has jurisdiction. However, the authority to sever misjoined claims or defendants under Rule 20 *presumes* the Court has jurisdiction to act.

As in *Osborn*, the Court finds no need to expand removal jurisdiction in that there is no showing that the state court is incompetent to determine the issue of misjoinder. Defendant fails to offer a sufficient explanation why severance could not be sought in state court and the severed portion of the litigation then removed to federal court. Finally, the Court finds that the question of expanding removal jurisdiction based upon the novel concept of fraudulent misjoinder is more appropriately presented to Congress. Therefore, in keeping with the requirement that any doubts about federal court jurisdiction be resolved in favor of remand (*Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992)), the Court has little hesitation in concluding that the question of misjoinder in this case should be resolved in the state court.

Significantly, however, even if this Court were to adopt the doctrine of fraudulent misjoinder, it is inapplicable to Plaintiffs' claims. In *Tapscott*, the Eleventh Circuit held a fraudulent misjoinder exception applies where a claim against a nondiverse defendant has "no real connection" with the claim against a diverse defendant. *Id.*, 77 F.3d at 1360. The court observed that the plaintiffs' operative complaint described two classes of defendants: (1) those who sold "extended service contracts in connection with the *retail products*" and (2) those who sold "service contracts in connection with the sale of *automobiles*" *Id.* at 1355 (emphasis in original). The court determined the alleged transactions involved in the "automobile" class were "wholly distinct" from alleged transactions involved in the "merchant" class, such that the claims were fraudulently misjoined. *Id.* at 1360. The Eleventh Circuit explained: "We do not hold that mere misjoinder is fraudulent joinder," but an attempt to join claims may be "so egregious as to constitute fraudulent joinder." *Id.*

Fed. R. Civ. P. 20 informs parties that defendants are not misjoined if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action." The Ninth Circuit has determined that matters arise out of the same transaction if they share "similarity in the factual background." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). If either prong is not satisfied, the defendants are misjoined and only in this event, may the Court consider severing them. *Id*.

In this case, Plaintiff claims damages arising from the implantation of the allegedly defective

surgical mesh product. (*See* Doc. 1-1 at 12, ¶52). Regardless of the content of the warnings supplied by Boston Scientific Corporation, and regardless of the advice given to Plaintiff by Dr. Park prior to surgery, no claim can succeed *unless* Plaintiff was injured by the implantation of the product. Thus, undoubtedly, Plaintiffs' claims against Dr. Park are not wholly distinct from those asserted against Boston Scientific Corporation; the damages are claimed to arise out of the same transaction or series of transactions and there are factual questions in common between the claims.

This damage question is the most obvious example of a common question but there are other substantive questions related to the product that are shared between the claims asserted against the defendants. These include, for example, whether the midurethral sling was defective; whether the midurethral sling provided adequate warnings of the risks posed by the use of the product; and, whether there were other risks not identified in the warnings which were knowable to the defendants at the time Plaintiff consented to the implantation of the device.[2] Thus, Plaintiff's claims against the defendants share a common origin and have the "real connection" lacking in *Tapscott*. *See, e.g., Haston v. Yeo*, 2013 U.S. Dist. LEXIS 33342 (C.D. Cal. Mar. 11, 2013) (finding no fraudulent misjoinder where the plaintiff alleged claims against a physician and medical manufacturers stemmed from the injuries she suffered as a result of the physician implanting the MiniArc® Sling System).

In this same vein, Plaintiffs' allegations against the defendants share common questions of fact and law, and arise from "the same transaction, occurrence, or series of transactions or occurrences," thereby satisfying the requirements of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 20; *Goodwin v. Kojian*, 2013 WL 1528966, at *4 (C.D. Cal. Apr. 12, 2013) (finding the plaintiffs' claims for product liability against the manufacturer and negligence against a physician "share common questions of fact and law" and "the fraudulent misjoinder doctrine would not apply to these facts"); *Watson v. Gish*, 2011 WL 2160924 at 3-4 (N.D. Cal. June 1, 2011) (same). Thus, Defendant has failed to demonstrate the claim against Dr. Park was fraudulently misjoined in this action.

///

---

[2] Plaintiff alleges that in October 2008 and again in February 2009, "the United States Food & Drug Administration informed health care providers about serious complications associated with transvaginal placement of surgical mesh in repair of pelvic organ prolapse and stress urinary incontinence." (Doc. 1-1 at 4, ¶8).

### IV. Conclusion and Order

Defendant has failed to carry the burden to demonstrate the Court has jurisdiction over the action. *See Duncan*, 76 F.3d at 1485; *Abrego*, 443 F.3d at 683-85. Consequently, remand of the action to Kern County Superior Court is appropriate.

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. Plaintiff's motion to remand (Doc. 10) is **GRANTED**;
2. Defendants' motion to stay (Doc. 13) is **MOOT**;
3. Defendants' motion to dismiss (Doc. 9) is **MOOT;**
4. This matter is **REMANDED** to Kern County Superior Court; and
5. The Clerk of Court is **DIRECTED** to close this matter, because this Order terminates the action in its entirety.

IT IS SO ORDERED.

Dated: **September 30, 2013**       /s/ Jennifer L. Thurston
UNITED STATES MAGISTRATE JUDGE